UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE R. WILSON,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br><br>   Defendant. | Case No. 5:14-cv-03880-PSG<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 24, 25)** |

Plaintiff Catherine R. Wilson seeks Social Security Disability Insurance benefits for fibromyalgia and other physical and psychiatric conditions. Pursuant to 42 U.S.C. § 405(g), Wilson requests judicial review of the Commissioner of Social Security's final decision denying her claim for benefits. Wilson moves for summary judgment and payment of benefits, while the Commissioner moves for summary judgment and affirmation of the Commissioner's final decision. Both motions are GRANTED-IN-PART and DENIED-IN-PART and this case is REMANDED for further proceedings.

**I.**

Wilson suffers from several physical and mental ailments, but her appeal focuses on fibromyalgia.[1] She first applied for Social Security disability benefits in 2010, and that claim was denied both initially and upon reconsideration.[2] Wilson then requested and received a hearing

---

[1] *See* Docket No. 24.

[2] *See* Docket No. 15-3 at 21.

Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

1

before an Administrative Law Judge.[3] The administrative law judge issued a ruling concluding that Wilson was not disabled, according to the five-step evaluation process for determining disability.[4]

The five-step evaluation process first asks whether a claimant is currently engaged in substantial gainful activity.[5] If yes, the claimant is not disabled. If no, the ALJ proceeds to step two and evaluates whether the claimant has a medically determinable impairment or combination of impairments that is severe.[6] If no, the claimant is not disabled. If yes, the ALJ proceeds to step three and considers whether the medically determinable impairment or combination of impairments meets or equals any of the listed impairments under 20 C.F.R. pt. 404, subpt. P, app. 1.[7] If yes, the claimant is disabled. If no, the ALJ proceeds to step four, determines the claimant's residual functional capacity and assesses whether the claimant is capable of performing her past relevant work.[8] If yes, the claimant is not disabled. If no, the ALJ goes to step five and considers the claimant's RFC, age, education and work experience to see if the claimant can make an adjustment to other work.[9] If yes, the claimant is not disabled; if no, the claimant is disabled.

The ALJ found at step one that Wilson was not engaged in substantial gainful activity.[10] At step two, the ALJ found that Wilson had three severe impairments: fibromyalgia syndrome, a personality disorder and a history of substance abuse/addiction associated with a mood disorder in

---

[3] *See id.*

[4] *See id.*; 20 C.F.R. § 416.920(a).

[5] *See* 20 C.F.R. § 416.920(a)(4)(i).

[6] *See* 20 C.F.R. § 416.920(a)(4)(ii).

[7] *See* 20 C.F.R. § 416.920(a)(4)(iii).

[8] *See* 20 C.F.R. § 416.920(a)(4)(iv).

[9] *See* 20 C.F.R. § 416.920(a)(4)(v).

[10] *See* Docket No. 15-3 at 23.

recent remission.[11] At step three, the ALJ found that Wilson did not have an impairment or combination of impairments meeting or medically equaling a listed impairment.[12] At step four, the ALJ found that Wilson had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except [Wilson] could not perform tasks that require more than occasional, routine, and superficial interaction with others in the workplace."[13] In determining Wilson's RFC, the ALJ made an adverse credibility finding against the persuasiveness of Wilson's testimony, and gave "little weight" to the RFC opinion of Wilson's treating physician, Dr. Santh Lingamneni, "little weight" to the RFC opinion of examining psychiatrist Dr. Steven J. Terrini and "great weight" to the RFC opinion of non-examining psychiatrist Dr. Alfred Jonas.[14] The ALJ then found that Wilson is unable to perform past relevant work.[15] At step five, the ALJ found that given Wilson's RFC, age, education and work experience, there were jobs existing in significant numbers in the national economy that Wilson could perform, namely "small parts assembler" and "hand packer/packager."[16] The ALJ thus found that Wilson was not disabled.

Wilson requested that the Appeals Council review the ALJ's unfavorable decision and the Appeals Council declined.[17] Wilson now appeals the ALJ's decision to this court, and both parties move for summary judgment.[18]

---

[11] *See id.*

[12] *See id.* at 24.

[13] *Id.* at 26.

[14] *See id.* at 28-33.

[15] *See id.* at 33.

[16] *Id.* at 34.

[17] *See* Docket No. 15-3 at 1.

[18] *See* Docket Nos. 1, 24, 25.

Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

## II.

The court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c).[19] The court finds this motion suitable for disposition on the papers in light of the court's local rules and procedural order.[20]

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."[21] The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error.[22] Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion.[23] Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.[24]

## III.

Applying the above standards, the motions are resolved as follows.

***First***, because the ALJ found that Wilson had a severe impairment of fibromyalgia, it is harmless error that the ALJ did not analyze Wilson's fibromyalgia claim under SSR 12-2p. SSR 12-2p establishes two sets of guidelines for analyzing whether a claimant has fibromyalgia.[25]

---

[19] *See* Docket Nos. 9, 10.

[20] *See* Docket No. 5; Civ. L.R. 7-1(b); Civ. L.R. 16-5.

[21] 42 U.S.C. § 405(g).

[22] *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

[23] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance.").

[24] *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

[25] *See* SSR 12-2p, 2012 WL 3104869, at *2-*3, 5.

4
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

These guidelines are relevant to the ALJ's determination at step two of whether a claimant has a medically determinable impairment of fibromyalgia.[26] Wilson is correct that the ALJ did not analyze Wilson's fibromyalgia claim under either set of guidelines. The ALJ nonetheless found that Wilson has a severe impairment of fibromyalgia.[27] It thus is harmless error that the ALJ did not follow SSR 12-2p, and reversal or remand on this issue is inappropriate.[28]

***Second***, the court finds that the majority of the ALJ's adverse credibility determination was supported by substantial evidence in the record, but that two aspects of the determination were not, and remands for further proceedings as to those issues.

When evaluating a claimant's testimony regarding the severity of her symptoms, the ALJ first must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms."[29] At this point, the claimant "'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"[30] If the claimant satisfies the first factor and there is no evidence of malingering, the ALJ must then provide "specific, clear, and

---

[26] *See id.*

[27] *See* Docket No. 15-3 at 23, 24.

[28] *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). The court notes that at step three of the sequential analysis, the ALJ failed to analyze whether Wilson's physical conditions met the requirements or equals the severity level for any listed impairment. She merely concluded that Wilson's physical conditions did not. *See* Docket No. 15-3 at 24. While this would normally be error, Wilson does not object or argue that it prejudiced her, and so the court does not reach this issue. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] 'substantial rights.'").

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted).

[30] *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)).

convincing reasons" for rejecting the claimant's testimony about the severity of her symptoms.[31] If the ALJ finds a claimant's testimony unreliable, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[32] It is "not sufficient for the ALJ to make only general findings."[33]

Wilson argues that the ALJ's adverse credibility finding was not supported by clear and convincing reasons.[34] She specifically objects to the ALJ's statements about (1) her ability to engage in various activities; (2) her wheelchair use; (3) her physical examinations; and (4) her level of improvement.[35] The court agrees in part with Wilson as to her first and third objections, but not the second and fourth.

Wilson's first objection to the adverse credibility finding is to the ALJ's finding that there were "significant inconsistencies between [Wilson's] alleged severity of her symptoms and limitations, and the evidence."[36] The ALJ held that the following testimony undermined Wilson's claims about the severity of her symptoms:

> The evidence shows the claimant has the ability to shop for small items, care appropriately for her grooming and hygiene with some assistance or support, drive short distances, get outside several times a day, manage her medical care and treatment, manage her legal obligations, prepare simple meals, use a computer, care for her child, utilize community resources to assist her with her basic needs, volunteer at her child's school, attend recovery meetings, attend church services, and attend community college. This evidence indicates the claimant's symptoms are not as severe as alleged, and that she has the ability to engage in multiple activities on a consistent basis.[37]

---

[31] *Lingenfelter*, 504 F.3d at 1036.

[32] *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted).

[33] *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ required to point to specific facts in the record which undermine a claimant's complaints).

[34] *See* Docket No. 24 at 14.

[35] *See id.* at 14-18.

[36] Docket No. 15-3 at 28.

[37] *See id.*

6

Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

At the hearing, Wilson testified to several limitations in her daily activities. The following testimony is relevant to Wilson's first objection: that she no longer volunteers with her daughter's school because getting to the school is too hard and tiring;[38] that her oldest son lives with her and does the cooking and drives Wilson's daughter to school, among several other caretaking tasks;[39] and that Wilson has custody of her daughter, even though she needs help taking care of her, because her daughter's father is a severe alcoholic.[40]

In the Ninth Circuit, ALJs may use testimony about a claimant's daily activities to make an adverse credibility finding about the claimant's allegations of pain.[41] There are two grounds for using daily activities to form the basis of an adverse credibility determination: if the claimant's activities contradict her other testimony, or if her activities meet the threshold for transferable work skills.[42] "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[43] However, if "a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."[44]

---

[38] See Docket No. 16-3 at 792-95.

[39] See id. at 801.

[40] See id. at 762.

[41] See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

[42] See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

[43] Fair, 885 F.2d at 603.

[44] Id.

The court finds that the ALJ identified specific, clear and convincing reasons for rejecting Wilson's testimony about the severity of her symptoms, with three exceptions. While the ALJ specifically listed the activities that she found were inconsistent with Wilson's allegations about the severity of her symptoms, there was not substantial evidence supporting the ALJ's reliance on three of the identified activities. The ALJ stated that the evidence showed that Wilson had the ability to prepare simple meals, care for her child and volunteer at her child's school.[45] Wilson's testimony at the hearing, however, was that her son cooked for her and sometimes drove her daughter to school,[46] that a lot of people had helped her take care of her daughter in the past and that she still needed help,[47] and that she had stopped volunteering at her daughter's school because it was too tiring and hard for her.[48] There thus was not substantial evidence to support the ALJ's finding that these activities were inconsistent with Wilson's testimony about the severity of her symptoms. Because the court cannot determine what weight the ALJ gave to these three activities versus Wilson's other activities in finding that Wilson's activities were inconsistent with the alleged intensity, persistence and limiting effects of her symptoms, the court remands for further proceedings as to this issue.

Wilson's second objection to the adverse credibility finding is to the ALJ's reliance on her wheelchair use to find that her symptoms are not as severe as alleged. The ALJ relied on two facts: first, that Dr. Cobert's medical records state that Wilson was observed unloading her wheelchair from her car trunk, setting it up and wheeling herself into the clinic, and second, that Wilson has not been "medically advised or prescribed any assistive device."[49]

---

[45] *See* Docket No. 15-3 at 28.

[46] *See* Docket No. 16-3 at 801.

[47] *See id.* at 762.

[48] *See id.* at 794.

[49] Docket No. 15-3 at 28.

8
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

Wilson challenges the accuracy of this note in her medical records,[50] and at the hearing, she stated that every time she visited Dr. Cobert, a nurse would meet her in the parking lot and set up the wheelchair, because Wilson could not pick it up herself.[51]  She also argues that even if the statement were accurate, it would be irrelevant because she does not engage in the activity of lifting a wheel chair on a full time basis and whether she can lift the wheelchair is irrelevant to whether she is in pain while doing so.[52]

This type of objection, where the medical records and the claimant's testimony contradict each other, is a classic issue of fact for the trier of fact to resolve.  The ALJ evaluated Wilson's testimony, the medical record and the lack of a wheelchair prescription and found that on balance, the evidence supported an adverse credibility finding.  The medical record and the lack of a prescription are substantial evidence supporting the ALJ's decision, and "[w]here, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision."[53]

Wilson's third objection to the adverse credibility finding is to the ALJ's reliance on her physical examinations and medical treatment to find that her symptoms were not as severe as alleged.  The ALJ held that Wilson had "unremarkable physical examinations," "normal strength in her extremities" and "no evidence of muscle atrophy," and that "imaging studies and observations of others indicate that she is capable of greater activities" than alleged.[54]  The ALJ also found it significant that Wilson's treatment was largely "conservative routine care" and noted

---

[50] *See* Docket No. 24 at 16.

[51] *See* Docket No. 16-3 at 797-98.

[52] *See* Docket No. 24 at 16.

[53] *Fair*, 885 F.2d at 604.

[54] Docket No. 15-3 at 28.

9
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

that Wilson had declined alternative treatments such as acupuncture and had stopped attending aquatic therapy.[55]

According to SSR 12-2p, fibromyalgia is characterized "primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues."[56] "[T]here is no lab test to confirm a diagnosis of fibromyalgia,"[57] and so SSR 12-2p requires that a fibromyalgia claim be evaluated according to either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria.[58] Laboratory testing, such as imaging studies, are used only to establish that other disorders that could cause the claimant's fibromyalgia symptoms or signs have been excluded.[59] According to the 2010 ACR Criteria, muscle atrophy is not one of the symptoms or signs of fibromyalgia.[60] Muscle weakness is one of approximately forty-one possible symptoms or signs of fibromyalgia listed in SSR 12-2p, but its presence is not required for a fibromyalgia diagnosis or MDI finding.[61]

The court finds that there was not substantial evidence to support the ALJ's reliance on Wilson's physical exams, strength, lack of atrophy, and imaging studies to find that Wilson's symptoms "were not as severe as alleged."[62] There are no imaging studies for fibromyalgia,

---

[55] *Id.*

[56] SSR 12-2p, 2012 WL 3104869, at *2.

[57] Mayo Clinic Staff, *Diseases and Conditions Fibromyalgia*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/fibromyalgia/basics/definition/con-20019243?p=1 (last visited Mar. 1, 2016).

[58] *See* SSR 12-2p, 2012 WL 3104869, at *2.

[59] *See id.* at *3.

[60] *See id.* at n.9 (listing somatic symptoms of fibromyalgia).

[61] *See id.* at *3, n.9 (listing approximately 41 somatic symptoms, including muscle weakness; only a minimum of 6 is required for a fibromyalgia diagnosis or MDI finding).

[62] *See* Docket No. 15-3 at 28.

atrophy is not a symptom or sign of fibromyalgia and muscle weakness is not a required symptom or sign of fibromyalgia. The absence of these indicia thus does not provide substantial support for the adverse credibility finding. As for the "unremarkable physical examinations,"[63] the ALJ found—without discussion—at step two that Wilson had an MDI of fibromyalgia, and thus presumably found that Wilson's medical history sufficiently established the MDI.[64] It thus is puzzling that the physical examinations were then used to find that Wilson's symptoms were not as severe as alleged.

      The court also finds, however, that the ALJ properly relied on Wilson's "conservative routine care" and her failure to pursue acupuncture and continue aquatic therapy in making an adverse credibility finding. Wilson argues that she is on Medi-Cal, which refused to approve a request for biofeedback treatment and would likely refuse to approve other radical treatments.[65] She also argues that there is no cure for fibromyalgia, and so her treatment appropriately addresses the symptoms instead.[66] While these may be valid reasons for her current course of treatment, it nonetheless is permissible for an ALJ to infer that a claimant's pain is not as severe as reported if the claimant "[does] not seek an aggressive treatment program."[67]

      Because the court cannot determine what weight the ALJ gave to the physical exams, imaging studies, lack of muscle weakness and lack of muscle atrophy versus Wilson's conservative care and failure to pursue certain therapies in making the adverse credibility determination, the court remands for further development as to this issue.

---

[63] *Id.*

[64] *See id.* at 23-24.

[65] *See* Docket No. 24 at 17.

[66] *See id.*

[67] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

11
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

Wilson's fourth objection to the adverse credibility finding is to the ALJ's finding that Wilson has shown improvement in her psychiatric complaints. Wilson argues that the medical evidence does not show improvement in her fibromyalgia and her depression,[68] but the ALJ's finding was specific to Wilson's psychiatric issues.[69] Wilson's objection thus is unfounded as to the fibromyalgia. As for Wilson's psychiatric complaints, the ALJ stated that Wilson "was able to discuss and process her history of traumas, engage with her providers, and was noted to have the ability to display cooperative and pleasant behaviors."[70] These are specific, clear and convincing reasons for the finding of "overall improvement during the course of treatment."

***Third***, the ALJ did not provide specific and legitimate reasons, based on substantial evidence in the record, for assigning "little weight" to the opinion of Lingamneni, Wilson's treating physician.

As a threshold matter, the ALJ must consider all medical opinion evidence.[71] The ALJ should assign "controlling weight" to a treating physician's opinion where medically approved diagnostic techniques support the opinion and it is consistent with other substantial evidence.[72] A treating physician's opinion is given more weight than an examining or non-examining physician's opinion[73] because these physicians are in a better position to know plaintiffs as individuals, and because the continuity of their treatment improves their ability to understand and assess an individual's medical concerns.[74] Thus, if a treating physician's opinion is not contradicted by

---

[68] *See* Docket No. 24 at 17.

[69] *See* Docket No. 15-3 at 28.

[70] *Id.*

[71] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

[72] *See* 20 C.F.R. § 404.1527(d)(2); *Orn*, 495 F.3d at 623-33.

[73] *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

[74] *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

12
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.[75]

If the treating physician's opinion is contradicted by another doctor, the ALJ may reject the treating opinion only if she provides "specific and legitimate reasons" supported by substantial evidence in the record.[76] This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating the ALJ's interpretation thereof and making findings.[77] The ALJ must do more than offer her conclusions. She must set forth her own interpretations and explain why they, rather than the doctor's, are correct.[78] "When an ALJ does not explicitly reject a medical opinion or set forth specific legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."[79]

Finally, even when an ALJ does not give a treating physician's opinion "controlling weight" because it is not "well-supported" or is inconsistent with other substantial evidence in the record, the ALJ should consider these factors to determine what weight to give the opinion: the length of the treatment relationship, frequency of examination, nature and extent of treatment relationship, consistency of opinion, evidence supporting the opinion, and the doctor's

---

[75] *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

[76] *Lester*, 81 F.3d at 830.

[77] *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

[78] *See Embrey*, 849 F.2d at 421-22.

[79] *Garrison*, 759 F.3d at 1012-13 (internal citation omitted).

13
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

specialization.[80]

Lingamneni, Wilson's treating physician, submitted a Physical Residual Function Capacity Questionnaire describing several physical limitations in Wilson's ability to work or function.[81] The ALJ did not assign "controlling weight" to Lingamneni's opinion, but instead gave it "little weight" for the following reasons:

> [1] the findings are overall inconsistent with the treatment records in evidence as well as the other evidence in the record overall.  [2] The opinion appears to reply in large part upon the subjective complaints of the claimant.  [3] The findings are inconsistent with imaging studies in evidence, clinical findings, lab findings, the claimant's reported activities and observations of third parties.  [4] The evidence does not show Lingamneni, or any other provider, imposed any limitations on the claimant's activities during the course of her treatment.  [5] Moreover, the claimant was not referred for specialist examinations, other than for pain management treatment.  [6] Furthermore, it is unclear from the form what objective evidence Lingamneni is relying upon in this assessment.[82]

The ALJ erred in assigning "little weight" to Lingamneni's opinion because she did not provide "specific and legitimate reasons" supported by substantial evidence in the record.[83]  The ALJ did not identify the specific conflicting clinical evidence she relied on, and  referred only to

---

[80] *See Orn*, 495 F.3d at 632 ("the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician") (Section 404.1527(d)(2)-(6) factors are now listed in Section 404.1527(c)(1)-(6)); 20 C.F.R. § 404.1527(c)(1)-(6).

[81] *See* Docket No. 15-13 at 750-54

[82] Docket No. 15-3 at 32.

[83] The "specific and legitimate reasons" standard is used when the treating physician's opinion is contradicted by another doctor.  In this case, non-examining physician Dr. M. Nawar's opinion contradicted Lingamneni's opinion, and so the court finds that the "specific and legitimate reasons" standard is appropriate.  *See* Docket No. 15-3 at 30, 32.  However, the ALJ gave Nawar's RFC "limited weight" and did not identify Nawar's RFC as a reason for giving "little weight" to Lingamneni's opinion.

14
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

the treatment records, imaging studies, clinical findings and lab findings generally.  She also did not offer her own interpretations of the evidence and explain why her interpretations, rather than the doctor's, were correct.[84]  She stated that Lingamneni's findings were "overall inconsistent" with the treatment records and "other evidence in the record overall,"[85] but this is no more than "boilerplate language that fails to offer a substantive basis for [the ALJ's] conclusion."[86]  "The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity.  Determining whether inconsistencies are material (or are in fact inconsistencies at all) . . . falls within this responsibility."[87]

The ALJ's failure to identify what evidence she finds inconsistent with Lingamneni's opinion is particularly troubling given inaccuracies in the ALJ's statements.  For example, contrary to the ALJ's third reason for granting "little weight," a 2012 MRI shows cervical spine disc protrusion and foraminal stenosis, both known to cause pain and thus consistent with Lingamneni's opinion.[88]  As for the ALJ's fifth reason, although she states that Wilson was not referred for specialist examinations, Wilson has been treated by a neurologist and an internist with a primary area of practice in rheumatology, and referred to physical therapy.[89]  Regarding the ALJ's sixth reason, although she states that it is unclear from the RFC form what objective evidence Lingamneni relied on, the form states that it was based on a "Phys[ical] evaluation."[90]

---

[84] *See* Docket No. 15-3 at 32.

[85] Docket No. 15-3 at 32.

[86] *Garrison*, 759 F.3d at 1013.

[87] *Morgan*, 169 F.3d at 603.

[88] *See* Docket No. 15-10 at 457.

[89] *See* Docket No. 15-9 at 426-49; Docket No. 15-11 at 519-20, 540-43, 624-26; Docket No. 15-12 at 699-702.

[90] Docket No. 15-13 at 751.

15
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

Finally, the ALJ also did not consider the Section 404.1527(d)(2)-(6) factors in determining how much weight to give the opinion. These omissions are error, and the court remands for further proceedings on how much weight to assign Lingamneni's opinion, and what effect that has on Wilson's RFC.

***Fourth***, the ALJ did not provide specific and legitimate reasons, based on substantial evidence in the record, for assigning "little weight" to the opinion of the examining psychiatrist, Dr. Steven J. Terrini. The ALJ did satisfy the Section 404.1527(c)(3) requirements for giving "great weight" to the opinion of the non-examining psychiatrist, Dr. Alfred Jonas.

An examining physician's opinion is generally given more weight than a non-examining physician's opinion.[91] If an examining physician's opinion is contradicted by another doctor's opinion and the ALJ rejects it, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence for rejecting it.[92] This is the same standard as for rejecting a contradicted treating physician's opinion. "Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'"[93]

The ALJ erred in assigning "little weight" to Terrini's opinion because she did not provide "specific and legitimate reasons" supported by substantial evidence in the record.[94] The ALJ

---

[91] *See* 20 C.F.R. § 404.1527(c)(1); *Garrison*, 759 F.3d at 1012.

[92] *Garrison*, 759 F.3d at 1012.

[93] *Id.* (quoting *Orn*, 495 F.3d at 633).

[94] The "specific and legitimate reasons" standard is used when the examining physician's opinion is contradicted by another doctor. In this case, Jonas' opinion contradicted Terrini's opinion as to Wilson's mental health diagnoses. *Compare* Docket No. 15-3 at 31 *with* 33. However, as to Wilson's limitations in social functioning and interpersonal work interactions, the opinions seem largely consistent. *See id.* Because of Jonas' opinion contradicts Terrini's opinion as to the diagnoses, the court finds that the "specific and legitimate reasons" standard is appropriate for the ALJ to use in considering what weight to give Terrini's opinion. The court notes, however, the ALJ did not identify Jonas' opinion as a reason for giving "little weight" to Terrini's opinion.

16
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

discounted Terrini's opinion as inconsistent with the evidence in the record of Wilson's daily activities, including her "ability to drive short distances, care for her daughter, attend church, attend recovery meetings, work with a sponsor in recovery, attend college, utilize community resources, manage her care, live with her adult children, maintain relationships with others, and manage her legal obligations."[95] The ALJ also noted that Terrini's opinion stated that Wilson "spent much of her time caring for her children, using a computer and going to school," and that Wilson "can take care of some of her personal needs, cook 'little things', and perform some grooming."[96] This is a thorough summary of the evidence that the ALJ believed conflicted with Terrini's opinion. However, the ALJ must do more than state the facts—she must also interpret them and explain why her interpretations, rather than the doctor's, are correct.[97] It is not immediately apparent how the evidence of Wilson's daily activities in non-work and home environments is inconsistent with Terrini's opinion that Wilson would have trouble with several aspects of working, such as performing "detailed and complicated tasks," "accepting instructions from supervisors," "interacting with co-workers and the public," "performing work activities of a consistent basis without special or additional instruction," "maintain[ing] regular attendance in the work place," "complet[ing] a normal workday and workweek without interruptions from a psychiatric condition" or "deal[ing] with the stress encountered in a competitive workplace."[98] The court thus remands for further proceedings as to the proper weight to give Terrini's opinion.

As for the Jonas opinion, the ALJ satisfied the requirements set out in Section 404.1527(c)(3) for giving "great weight" to a non-examining psychiatrist's opinion. When considering a non-examining physician's opinion, the weight the ALJ gives to a non-examining

---

[95] Docket No. 15-3 at 31.

[96] *Id.*

[97] *Reddick*, 157 F.3d 725.

[98] Docket No. 15-3 at 31.

opinion depends "on the degree to which [the non-examining physician] provide[s] supporting explanations for their opinions."[99] This is because non-examining sources "have no examining or treating relationship" with a claimant.[100] The ALJ must "evaluate the degree to which [non-examining] opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources."[101]

Here, the ALJ's opinion states that Jonas' opinion is given great weight because it "is based upon a thorough review of all evidence in the record regarding mental treatment and from additional information provided by the claimant at the time of the hearing."[102] "[A]ll evidence in the record" logically encompasses all pertinent evidence, including treating and examining physician's opinions. The ALJ thus did not err in assigning "great weight" to Jonas' opinion.

*Fifth*, the ALJ properly relied on the vocational expert in finding that there are "jobs that exist in significant numbers in the national economy" that Wilson can perform, given her RFC, age, education and work experience.[103] However, the RFC of "light work" but not tasks requiring more than "occasional, routine, and superficial interaction with others in the workplace" was based on an adverse credibility finding as to Wilson's statements regarding the "intensity, persistence and limiting effects" of her symptoms; giving "little weight" to Lingamneni's RFC opinion; giving "little weight" Terrini's RFC opinion; and giving "great weight" to Jonas' RFC opinion.[104] The court is remanding for further proceedings as to the adverse credibility finding and the weight given to Lingamneni's and Terrini's opinions. The outcome on remand may affect Wilson's RFC

---

[99] 20 C.F.R. § 404.1527(c)(3).

[100] *Id.*

[101] *Id.*

[102] Docket No. 15-3 at 33.

[103] *Id.* at 34.

[104] *Id.* at 26-33.

18
Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT

and thus the ALJ's assessment of whether work exists in significant numbers in the national economy that Wilson can perform, given her RFC, age, education and work experience. The court therefore also remands as to the ALJ's analysis at step five.

## IV.

Wilson asks the court to reverse for payment of benefits.[105] Generally, when the court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[106] The court may remand for an immediate award of benefits only where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."[107] The credit-as-true standard is not satisfied here: further administrative proceedings are necessary regarding the ALJ's adverse credibility finding against Wilson's testimony about the severity of her symptoms; the ALJ's assignment of "little weight" to Lingamneni's and Terrini's opinions; and if necessary, Wilson's RFC and whether given Wilson's RFC, age, education and work experience, there are jobs existing in significant numbers in the national economy that Wilson can perform. The court REMANDS for reconsideration consistent with this order and GRANTS-IN-PART and DENIES-IN-PART both Wilson's and the Commissioner's motions for summary judgment.

---

[105] *See* Docket No. 24 at 23.

[106] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

[107] *Garrison*, 759 F.3d at 1020.

1  **SO ORDERED.**

2  Dated: March 3, 2016

3  _____
   PAUL S. GREWAL
4  United States Magistrate Judge

Case No. 5:14-cv-03880-PSG
ORDER GRANTING-IN-PART AND DENYING-IN-PART CROSS-MOTIONS FOR SUMMARY JUDGMENT